# In the United States Court of Federal Claims

No. 22-1274
(Filed Under Seal: October 7, 2022)
(Reissued for Publication: December 2, 2022)[1]

| | | |
|---|---|---|
| **************************************** | | |
| LS3, INC., | * | |
| (d/b/a LS3 TECHNOLOGIES, INC.), | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Bid Protest; Motion for |
| | * | Preliminary Injunction; Motion to |
| THE UNITED STATES, | * | Supplement the Administrative |
| | * | Record; Motion to Strike; |
| Defendant, | * | Likelihood of Success on the |
| | * | Merits; Irreparable Harm. |
| and | * | |
| | * | |
| EASY DYNAMICS CORPORATION, | * | |
| | * | |
| Defendant-Intervenor. | * | |
| **************************************** | | |

*Jon Davidson Levin*, Maynard, Cooper & Gale, PC, Huntsville, AL, counsel for Plaintiff. With whom were *W. Brad English*, *Emily J. Chancey*, *Joshua B. Duvall*, and *Nicholas P. Greer*, of counsel.

*Elinor Joung Kim*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. *Paula Hughes*, General Attorney, U.S. Department of Education, of counsel.

*Matthew Thomas Schoonover*, Schoonover & Moriarty LLC, Olathe, KS, counsel for Defendant-Intervenor. With whom were *Matthew P. Moriarty*, *John M. Mattox II*, and *Ian P. Patterson*, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

      Before the Court is a motion filed by LS3, Inc. ("LS3") requesting that the Court preliminarily enjoin the United States Department of Education ("Department") from proceeding

---

[1] This Opinion and Order was filed under seal on October 7, 2022, *see* [ECF 44], in accordance with the Protective Order entered on September 14, 2022 *see* [ECF 14]. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The parties filed a joint status report on October 21, 2022, with agreed upon proposed redactions. [ECF 49]. The Court accepts the parties' proposed redactions. All redactions are indicated by bracket asterisks, *e.g.*, "[* * *]."

with performance of a blanket purchase agreement ("BPA") for Identity Credential and Access Management ("ICAM") services that it awarded to Easy Dynamics Corporation ("Easy Dynamics"). Also before the Court is LS3's motion to supplement the administrative record with three declarations that it filed in connection with its protest. The government and Easy Dynamics oppose supplementation of the administrative record and move to strike the declarations.

For the reasons stated below, the Court finds that LS3 has not met its burden to demonstrate that it is entitled to injunctive relief. Additionally, the Court finds that the declarations filed by LS3 are not necessary for the Court to perform effective judicial review, and, therefore, such extra record evidence is not appropriately part of the administrative record.

**I.    FACTUAL BACKGROUND**

On July 1, 2022, the Department issued a final Request for Quotes ("RFQ") for ICAM program and enterprise services. AR 247.[2] The Department sought to award a single-award blanket purchase agreement and call order pursuant to the procedures set forth in Federal Acquisition Regulation ("FAR") 8.4. AR 250, 334, 336, 1271. The estimated total value of the BPA was $50,000,000. AR 250. The stated scope of services was to "implement ICAM Enterprise Services . . . in a Software as a Services (SaaS) model to the fullest extent possible." AR 292. Accordingly, the RFQ required that offerors propose "products and services necessary to provide and implement a FedRAMP approved, enterprise ICAM solution . . . in a SaaS model or in a Platform as a Service (PaaS) model with a clear established path to mature it to a SaaS model." *Id*. The RFQ stated that "[o]nly FedRAMP-authorized ICAM solutions will be accepted[,]" and the Department advised that the proposed solution "needs to be authorized at the time of Phase I submissions." AR 179, 292.

The RFQ provided for a two-phase evaluation using six evaluation factors: Demonstrated ICAM Requirements Compliance (Factor 1); Solution Demonstration & Slide Deck (Factor 2); Capability of Proposed Call Order Personnel (Factor 3); Draft Project Schedule (Factor 4); Past Performance (Factor 5); and Business Submission & Pricing Workbook (Factor 6). AR 334. Factors 1-4 would be evaluated "holistically" using a rating scale of "high confidence," "some confidence," or "low confidence" based on the Department's level of confidence that the offeror "understands the requirement, proposed a sound approach, and will be successful in performing the work." *Id*. When evaluating proposals, the Department would consider all non-price factors, when combined, to be approximately equal to price (Factor 6). *Id*. As the non-price factors of competing proposals approached equal, price (Factor 6) would become more important in the Department's best value trade-off decision. *Id*. Ultimately, the Department would award the BPA to the offeror that represents the best value based on the best-value trade-off analysis. *Id*.

Phase I of the procurement consisted of evaluating Factor 1. AR 334. This factor required that offerors submit answers to a list of questions provided as an attachment to the RFQ. AR 329. Phase I submissions would be evaluated "based on the extent to which [the] Offeror's proposed ICAM Solution [is able] to meet the Department's requirements and the Department's confidence in the Offeror's approach." AR 335. Offerors whose quotes were among the highest

---

[2] The Court cites to the Administrative Record, filed by the government at [ECF 34] as "AR ___."

rated would receive an advisory notice to proceed to Phase II. AR 329. Offerors whose quotes were not among the highest rated would receive an advisory notice that they are unlikely to be a viable competitor for award. *Id*. However, such offerors may still elect to continue participation in the procurement. *Id*.

Phase II of the procurement consisted of evaluating Factors 2-6. AR 329-33. Only Factors 2, 3, and 5 are relevant for this bid protest. Under Factor 2, offerors were required to give an oral presentation on their ICAM solution, including a slide presentation and a visual demonstration on how they would handle various scenarios. *See* AR 329-31. The RFQ stated that "solution demonstrations do not constitute open discussions" and that "[t]he Offeror shall not volunteer any information that might be construed as changing its quote." AR 331. Under Factor 3, offerors were required to submit resumes that "describe the specific, relevant experience and availability of key personnel[.]" *Id*. Under Factor 5, offerors were required to provide a maximum of three references that demonstrate past performance. AR 331-332. Past performance references were required to be "recent and relevant" in addition to being "similar in size, scope and complexity to the tasks identified in the [performance work statement]." AR 332.

The Department received four quotes in response to the RFQ, including the quotes submitted by LS3 and Easy Dynamics. *See* AR 348-95. Following Phase I, LS3 received an advisory notice from the Department stating that its offer was not among the most highly rated and advising LS3 that it not participate in the next phase of the procurement. AR 1227. Despite this notice, LS3 elected to continue to Phase II. AR 1226-27. Following Phase II, the offerors were rated as follows:

| Factor | Easy Dynamics | [* * *] | [* * *] | LS3 Technologies |
|---|---|---|---|---|
| Phase 1: Factor 1 – Demonstrated ICAM Requirements Compliance | Some Confidence | [* * *] | [* * *] | Low Confidence |
| Phase 2: Factor 2 – Solution Demonstration & Slide Deck | High Confidence | [* * *] | [* * *] | Low Confidence |
| Phase 2: Factor 3 – Capability of Proposed Call Order Personnel | High Confidence | [* * *] | [* * *] | High Confidence |
| Phase 2: Factor 4 – Draft Project Schedule | Some Confidence | [* * *] | [* * *] | Some Confidence |
| Phase 2: Factor 5 – Past Performance | Satisfactory/Low Performance Risk | [* * *] | [* * *] | Neutral/Unknown Performance Risks |
| Phase 2: Factor 6 – Business Submission & Price Workbook – Total Evaluated Price | $7,779,150.61 | [* * *] | [* * *] | $5,699,920.11 |

AR 1278. Based on these ratings, the contracting officer ("CO") conducted a best value trade-off analysis and determined that Easy Dynamics reflected the best value. AR 1279-80. The Department awarded the BPA to Easy Dynamics on August 30, 2022, and Easy Dynamics began performance on September 1, 2022. AR 1309, 1349.

## II.     PROCEDURAL HISTORY

LS3 filed its complaint on September 9, 2022, alleging that the Department's evaluation and award decision was arbitrary, capricious, and contrary to law. Compl. [ECF 1].[3] LS3 also filed a motion for preliminary injunction seeking to prevent the Department from proceeding with its award "pending the outcome of this protest." Pl.'s Mot. for Prelim. Injunction [ECF 3] at 24.[4] Shortly thereafter, LS3 filed declarations from Steve Roberts, John Martinez, and Thomas Bragg. Roberts Decl. [ECF 29]; Martinez Decl. [ECF 30]; Bragg Decl. [ECF 31].

The government did not agree to voluntarily stay performance under the BPA. The government filed the administrative record for the procurement on September 23, 2022, and the government and Easy Dynamics filed oppositions to LS3's motion for a preliminary injunction on September 26, 2022. *See* Def.-Intervenor's Resp. to Mot. for Prelim. Injunction [ECF 27]; Def.'s Resp. to Mot. for Prelim. Injunction [ECF 38]. LS3 filed its reply in support of its motion for preliminary injunction on September 28, 2022. *See* Pl.'s Reply [ECF 42].

After the government filed the administrative record, LS3 filed a combined motion to compel the government to complete the administrative record and to supplement the administrative record with its previously filed declarations. Pl.'s Mot. to Compel Def. to Complete or Supp. the Admin. R. [ECF 35].[5] The government and Easy Dynamics opposed supplementing the administrative record and moved to strike the declarations. *See* Def.'s Mot. to Strike [ECF 39]; *see also* Def.-Intervenor's Resp. to Mot. to Complete [ECF 41] at 1.

The Court held oral argument on September 29, 2022. *See* Order Rescheduling Oral Arg. [ECF 28].

## III.    MOTION TO SUPPLEMENT THE RECORD

LS3 moves to supplement the administrative record with declarations made by Steve Roberts, John Martinez, and Thomas Bragg. Mr. Roberts is the Vice President and Chief Operating Officer of LS3, and Mr. Martinez is a Program Manager at LS3. [ECF 29] ¶ 2; [ECF 30] ¶ 2. LS3 argues that the declarations of Messrs. Roberts and Martinez are necessary for the Court to effectively review whether the Department reasonably evaluated LS3's past performance. [ECF 35] at 6. LS3 argues that the "declarations demonstrate that the contracting officer and [Alternate Contracting Officer's Representative] were well aware of LS3's prior performance and ignored it when evaluating past performance." *Id*. [ECF 35] at 6. Mr. Bragg is an expert consultant hired by LS3 in connection with this protest. [ECF 31] ¶¶ 1, 4. LS3 argues that his declaration is needed because "[t]his is a technical procurement" and "[t]he Court

---

[3] LS3 amended its complaint after receiving the administrative record. *See* Am Compl. [ECF 36].

[4] The Court references the page numbers generated by CM/ECF (located in the header of each page) for all filings by the parties in this case.

[5] In its motion to complete the administrative record, LS3 requests that the Court compel the government to complete the record with certain software licensing information and communications between the Department and LS3 and the recording of the oral presentations under Factor 2. The Court defers ruling on this motion because such documents are not necessary for deciding LS3's motion for a preliminary injunction.

4

requires Mr. Bragg's explanation to understand why the Agency's evaluation of LS3's [* * * * * * *] solution and Easy's [* * * * *] solution are arbitrary and capricious." [ECF 35] at 5. The government and Easy Dynamics oppose supplementation of the record on the grounds that the declarations do not directly relate to the non-merits injunctive relief factors and instead attempt to establish the merits of LS3's protest allegations, which they assert should be determined by the Court based solely on the record that was before the Department. *See* [ECF 39]; [ECF 41]. The government and Easy Dynamics, thus, seek to strike the declarations from the record. *Id*.

A motion to supplement the administrative record "seeks to add materials that the agency did not consider but should be considered to permit a proper evaluation of the agency's decision." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). Judicial review of an agency decision should be focused on "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Federal Circuit has instructed that, in bid protest cases, "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quotation marks omitted). A party seeking to supplement the administrative record bears the burden of showing why the current record is insufficient for effective judicial review. *Swift & Staley, Inc. v. United States*, 159 Fed. Cl. 494, 505 (2022).

The declaration provided by Mr. Roberts primarily consists of statements relating to his involvement with a predecessor contract between LS3 and the Department. [ECF 29] ¶¶ 4-11. Mr. Roberts states that, under the predecessor contract, LS3 performed ICAM engineering, integration, and support services, *id*. ¶¶ 4-5, 7-8, and interacted with certain Department officials, who are involved in the evaluations under instant procurement. *Id.* ¶¶ 11. He also states that he oversaw LS3's quote for the instant procurement and participated in LS3's oral presentation. *Id.* ¶¶ 12-14. Further, Mr. Roberts identifies information that LS3 allegedly communicated to the Department during its oral presentation, and he offers his opinion on the efficacy of the ICAM solution proposed by Easy Dynamics. *Id.* ¶¶ 13, 15-16. In his declaration, Mr. Martinez describes the ICAM design and engineering services that LS3 performed for the Department under its predecessor contract. *See id.* ¶¶ 3-4.

These declarations are not necessary for effective judicial review. LS3 provides these declarations to show that the Department was aware of LS3's performance of ICAM implementation services under its predecessor contract with the Department yet failed to account for this experience as part of its evaluation under the RFQ. However, the administrative record demonstrates that the Department's evaluation team appropriately reviewed the predecessor contract for recency and relevance in accordance with the terms of solicitation and determined that it was not relevant. *See* AR 1307-08 (stating that the "[c]ontract is not similar in size, scope, and complexity"; stating also that LS3 "is providing support that is similar for some tasks but not supporting critical ICAM implementation"). LS3 attempts to refute the merits of the Department's determination by submitting the declarations that reflect a contrary position on the relevance of LS3's past performance. The Court declines the invitation to supplement the administrative record with this type of extra-record evidence. *See Hirsch v. United States*, 144

Fed. Cl. 55, 58-59 (2019); *Res-Care, Inc. v. United States*, 107 Fed. Cl. 136, 139 (2012); *FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 372 (2011)

The Court, likewise, does not need Mr. Bragg's declaration to perform effective judicial review. In his declaration, Mr. Bragg describes the RFQ procurement process, [ECF 31] ¶¶ 8-23, explains LS3's proposed ICAM solution, *id.* ¶¶ 24-25, and offers his opinion on the practicality of Easy Dynamics proposed solution. *Id.* ¶ 26. The Court may supplement the administrative record with expert reports when necessary to assist the Court in understanding technical or complex information in a challenged procurement. *See Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 241-42 (2016); *NCL Logistics Co. v. United States*, 109 Fed.Cl. 596, 613 (2013). However, none of Mr. Bragg's declarations help the Court to objectively understand technical aspects of the procurement. Instead, Mr. Bragg attempts to challenge the merits of the Department's evaluation and selection decision as irrational, *see* [ECF 31] ¶¶ 20, 25, 26, and disagrees with the Department's interpretation of the RFQ requirements and LS3's proposal, *see id.* ¶¶ 21-25. As such, supplementation of the administrative record with his declaration is not appropriate. *See Commc'n Constr. Servs., Inc. v. United States*, 116 Fed. Cl. 233, 258 (2014); *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 6 (2009).

### IV.     MOTION FOR PRELIMINARY INJUNCTION

LS3 requests that the Court enter an injunction preventing the Department from continuing performance under the BPA award made to Easy Dynamics during the pendency of its protest. *See* [ECF 3] at 5. The government and Easy Dynamics argue that LS3 has not met its burden to demonstrate that it is entitled to a preliminary injunction. *See* [ECF 37] at 2; [ECF 38] at 8. As explained below, the Court finds that the injunctive relief factors weigh against granting a preliminary injunction.

The Tucker Act grants this Court authority to award any relief it considers proper, including injunctive relief. *See* 28 U.S.C. § 1491(b)(2). However, injunctive relief "may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). When determining whether to grant a preliminary injunction, the Court considers: (1) whether the movant has a reasonable likelihood of success on the merits, (2) whether the movant will suffer irreparable harm if an injunction is not granted, (3) whether the balance of hardships tips in the movant's favor, and (4) whether the public interest is best served by an injunction. *See id.; see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). While no one factor is dispositive, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned to the other factors, to justify the denial." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). The burden to demonstrate entitlement to an injunction is on the movant. *Id.* Additionally, "a movant *must* establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (emphasis added).

A.     **Likelihood of Success on the Merits**

To satisfy the likelihood of success on the merits factor, LS3 must show that it is "more likely than not" to succeed in its protest of the Department's award of the BPA to Easy Dynamics. *See Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012); *see also Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012). This Court reviews bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"), *see* 28 U.S.C. § 1491(b)(4), which permits the Court to set aside an agency's contracting decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *see Off. Design Grp. v. United States,* 951 F.3d 1366, 1371 (Fed. Cir. 2020). The Court may set aside a bid protest award if "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *WellPoint Mil. Care Corp. v. United States,* 953 F.3d 1373, 1377 (Fed. Cir. 2020)). The "arbitrary or capricious standard . . . is highly deferential" to the agency decision and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). A protestor "bears a *heavy burden* of showing that the award decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (cleaned up) (emphasis added).

1.     **LS3's challenges to the Department's evaluation of its quote**

LS3 makes numerous arguments alleging that the Department acted arbitrarily in its evaluation of LS3's proposal. *See* [ECF 3] at 22-25. However, its arguments are not likely to succeed on the merits because they are contradicted by the administrative record or seek to second guess decisions that are within the agency's discretion.

LS3 challenges the Department's finding that LS3 failed to disclose a security breach suffered by a component of LS3's proposed solution. *See* [ECF 3] at 22-23, AR 1219. LS3 was required by the RFQ to disclose whether any products used for its solution had experienced a data breach, *see* AR 363, and LS3 responded that "[o]ur solution has never had a data breach." AR 363. However, LS3 admits in its briefing that one of its products used for its solution suffered a security breach. *See* [ECF 3] at 22. Therefore, despite LS3's disagreement with the nature and severity of the security breach, the Department had a rational basis for its finding.[6] Further, to the extent LS3 argues that the Department unequally treated Easy Dynamics' response to the security breach disclosure requirement, the record shows that Easy Dynamics disclosed the most recent security breach affecting its solution and provided a link to where the Department could find information about other breaches. *See* AR 375.

In another one of its challenges, LS3 argues that the Department acted arbitrarily by finding that its proposal lacked clarity on whether it uses [* * * * *] SaaS or PaaS. *See* [ECF 3] at 23-24; AR 1218. However, the Department's finding is supported by the administrative record. In its quote, LS3 identifies [* * * *] PaaS as part of its ICAM solution only one time—in

---

[6] LS3's failure to disclose the security breach is even more glaring considering that two other offerors, [* * * * * * * * * * *] and [* * * * * * *], disclosed the security breach relating to the same product used by LS3. *See* AR 357, 395.

7

response to Question 5. *See* AR 359. LS3 fails to mention [* * * * *] PaaS again—either in its responses to the Department's questions or in its oral presentation. *See* AR 359-67, 1074-115. In addition to mentioning its use of [* * * *] PaaS only one time in its quote, LS3 states in response to Question 8 that "[o]ur solution is a fully SaaS model." AR 359. This statement contradicts the fact that LS3 plans to use [* * * *] PaaS in its solution. Thus, the record demonstrates that the Department had a rational basis for finding that LS3's quote lacked clarity in this regard.

LS3's argument that the Department acted arbitrarily by finding that LS3's [* * * * * * * *] solution is not FedRAMP authorized is similarly not likely to succeed. *See* AR 1218; [ECF 42] at 8. LS3 admits in its quote that its [* * * * * * *] solution is not FedRAMP authorized when it lists [* * * * * * *] as a product used for its solution that does not have FedRAMP authorization. AR 359. LS3 also states that its solution will not receive FedRAMP authorization by the time of award. *Id*. ("FedRAMP authorization is expected within 6 months of contract award."). This is not compliant with the RFQ's stated requirement that the proposed solution be FedRAMP authorized by the time of Phase I submissions. *See* AR 179, 292.

LS3 makes several other arguments challenging the Department's evaluation of its proposal, but none of these arguments establish a likelihood of success on the merits. LS3 challenges the Department's findings relating to LS3's lack of clarity over how Amazon Web Services factors into its solution, LS3's changing its quote during oral presentations, LS3's oral presentation being disjointed, and the Department's lack of confidence in LS3's experts. LS3 also argues that the Department failed to give it credit for certain strengths in quote. The challenged findings appear to fall within the minutiae of the procurement process that the Court will not second guess. *See E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1311 (Fed. Cir. 2021) (stating that an agency "is given broad discretion in [its] evaluation of bids."); *Red Cedar Harmonia, LLC v. United States*, 144 Fed. Cl. 11, 22 (2019) ("This [C]ourt gives great deference to an agency's technical evaluation of an offeror's proposal.") (quotation marks omitted).

### 2. LS3's challenge to the Department's evaluation of Easy Dynamics' solution

In addition to challenging the Department's evaluation of its solution, LS3 alleges that the Department was arbitrary in its evaluation of Easy Dynamics' proposed solution. LS3 argues that Easy Dynamics solution is technically unacceptable because it is unclear which Microsoft product is being used and, if Easy Dynamics is using [* * * * * * * *], that it is not a "stand-alone product." [ECF 3] at 25-26, [ECF 42] at 9. LS3 argues that Easy Dynamics "intended to use the Agency's existing [Microsoft] E5 licenses without proposing any product at all." [ECF 42] at 9. Further, LS3 argues that Easy Dynamics does not provide a SaaS solution or a firm transition to a SaaS solution. [ECF 3] at 26. Finally, LS3 challenges various technical aspects of Easy Dynamics' proposed use of [* * ** * * * *], such as its scalability, multifactor authentication capabilities, and ability to integrate with pre-existing infrastructure. *See* [ECF 3] at 27-30.

LS3's challenges appear to amount to nothing more than disagreement with the Department's technical evaluation and findings with respect to Easy Dynamics' proposed

solution. Despite LS3's assessment of Easy Dynamics' solution, its argument that the Department was arbitrary in its evaluation is not supported by the record. The record shows that Easy Dynamics proposed using [* * * * * * * * * * *] not as a stand-alone solution but instead as part of its overall solution, which also included [* * * * * * * * * * * * * ** * ** * ** * * * * *]. *See* AR 371, 374-75, 377, 427-28. With respect to Easy Dynamics' use of the Department's existing licenses, the RFQ provided that "[t]he government will provide the Contractor with access to Office 365 E5 licenses that the government owns." AR 77. Thus, Easy Dynamics was permitted to propose a solution that relied on the use of the government's existing Microsoft licenses. Additionally, the record contains support for the Department's finding that Easy Dynamics provided a transition plan to migrate to a fully SaaS solution. *See* AR 369. With respect to scalability, Easy Dynamics' quote contains an explanation of how its solution is scalable. *See* AR 371-72. In sum, these types of challenges do not establish a likelihood of success on the merits. *See Avtel Servs., Inc. v. United States*, 70 Fed. Cl. 173, 218 (2006) ("[A] protestor's mere disagreement with the agency's evaluation determination does not provide a basis for sustaining the protest."). Based on the record, it appears that the Department concluded that Easy Dynamics adequately described their solution, and the Department is "given broad discretion with respect to evaluation of technical proposals" including whether proposals are technically acceptable. *See Omega World Travel, Inc. v. United States,* 54 Fed.Cl. 570, 578 (2002) (citing *E.W. Bliss*, 77 F.3d at 449); *Labat-Anderson, Inc. v. United States*, 42 Fed. Cl. 806, 846 (1999).

### 3. LS3's challenge to the Department's evaluation of its past performance

LS3 argues that the Department arbitrarily assigned a rating of "Neutral/Unknown" for its past performance. [ECF 3] at 30-32. In response to the past performance factor, LS3 submitted three references, which included two prior contracts with the Department under which LS3 performed ICAM enterprise services. *See* AR 1307-08. The Department evaluated these prior contracts and determined that they were not "relevant" to the RFQ requirements. *Id*. The Department also concluded that the contracts were not similar in size, scope, and complexity. *Id*.

The Department had a rational basis for its conclusions, which makes it unlikely that LS3 will succeed on the merits of its challenge. The prior contracts submitted by LS3 are not similar in size to the BPA. The BPA has an estimated value of $50,000,000 while the prior contracts submitted by LS3 each have an estimated value of less than $4,000,000. AR 250, 1307. Aside from the difference in size, the Department also determined that the services performed by LS3 under the prior contracts were "similar for some tasks" under the RFQ but were "not supporting critical ICAM implementation." AR 1307. Even if LS3 disagrees with the Department's conclusions, the agency is given considerable deference to determine which past performance data is relevant. *See PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 539 (2010); *Mortgage Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 125-26 (2021); *Commissioning Solutions Global, LLC v. United States*, 97 Fed. Cl. 1, 9 (2011).

####	4.	LS3's challenge to the Department's best value trade-off analysis

LS3 argues that the best value trade-off analysis conducted by the CO was spoiled by the Department's flawed evaluation and that the CO "failed to appropriately balance price and non-price factors." [ECF 3] at 33. LS3 has not demonstrated that its challenge to the Department's best value trade-off analysis is likely to succeed. Because LS3 has not demonstrated that its challenges to the evaluation are likely to succeed, *see supra* Sections IV.A.1-3, it logically follows that LS3's argument that the best value trade-off was spoiled by a flawed evaluation is also not likely to succeed. Moreover, the record shows that the best value trade-off analysis was consistent with the terms of the RFQ and had a rational basis.

The RFQ stated that the Department would award the BPA to the offeror "whose quote/oral presentation, conforming to this RFQ, will be most advantageous to the [Department], price and other factors considered." AR 334. The Department intended to award the BPA to the offeror "who represents the Best Value" using a "Best-Value Trade-Off Analysis." *Id*. All non-price factors, when combined, would be considered equal to price, and, as the non-price factors of competing quotes approached equal, price would become more important. *Id*.

The record demonstrates that the CO appropriately considered the price and non-price factors. After analyzing the evaluation results, the CO stated that "[w]hile [* * * * * * * * * * * * * * * * * * * * * *], and LS3 Technologies are less expensive than Easy Dynamics, the Department has determined that they fail to meet material requirements of the RFQ." *Id*. She further stated that "Easy Dynamics' proposed approach is the only approach that meets the critical requirements of the RFQ." *Id*. For all non-price factors, she noted that "Easy Dynamics' approach is the highest rated among the quotes" and explained that the primary reason for Easy Dynamics' proposed price being the highest is their "[* * ** * * * * * * * * *]." *Id*. She concluded that "Easy Dynamics' comprehensive approach is determined to provide the Best Value to the [Department]." The Department therefore had a rational basis for its best value trade-off analysis and decision to select Easy Dynamics for award. *See Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1355 (Fed. Cir. 2004) ("It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value."); *MVM, Inc. v. United States*, 149 Fed. Cl. 478, 491 (2020) ("[T]he government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision."); *Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 522-523 (2013).

###	B.	Irreparable Injury

Absent injunctive relief, LS3 claims that it will suffer irreparable injury because, in addition to the lost opportunity to compete, *see* [ECF 3] at 34, Easy Dynamics' ICAM solution "will be fully embedded by the time this matter is decided on the merits[,]" [ECF 42] at 18. An irreparable harm exists when, absent a preliminary injunction, the movant would be deprived of the only remedy available if it were to succeed on the merits of its claim. *See Qingdao Taifa Grp. Co., Ltd. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009); *IBM Corp. v. United States*, 118

Fed. Cl. 677, 683 (2014). To show irreparable injury, the movant must demonstrate that "irreparable injury is *likely* in the absence of an injunction, not that it is a mere possibility. *See Winter*, 555 U.S. at 22 (emphasis in the original).

LS3's claimed harms do not constitute a showing of irreparable injury. If LS3 ultimately prevails on the merits of its protest, it will have an opportunity to recompete for the award in a new competition. *See Harmonia Holdings Grp., LLC v. United States*, 156 Fed. Cl. 238, 248 (2021). Additionally, the fact that Easy Dynamics will continue to perform under the BPA does not necessarily result in the Department becoming irreversibly tied to Easy Dynamics or the technology solutions provided by Easy Dynamics. This alleged harm is too generalized and speculative to establish irreparable harm for the purpose of granting the extraordinary remedy of injunctive relief. *See Lockheed Martin Corp. v. United States*, 124 Fed. Cl. 709, 729 (2016) ("[A] plaintiff may not show irreparable harm by claiming generically that the winner's transition into performance will give it advantages."); *see also SVD Stars II, LLC v. United States*, 138 Fed. Cl. 483, 488 (2018); *Sierra Military Health Servs., Inc. v. United States*, 58 Fed. Cl. 573, 582-83 (2003).

### C. Balance of Harms and Public Interest

Because LS3 has not demonstrated that it is likely to succeed on the merits of its bid protest and that it will suffer irreparable injury absent injunctive relief, LS3 is not entitled to a preliminary injunction. *See Altana Pharma*, 566 F.3d at 1005; *Amazon,* 239 F.3d at 1350. Nevertheless, the balance of harms and public interest factors also weigh against granting injunctive relief.

The BPA was awarded to Easy Dynamics on August 30, 2022. AR 1309. Easy Dynamics began performing services under the BPA on September 1, 2022. [ECF 38] at 9-10. The Department's previous ICAM solution is in the process of being, or has already been, decommissioned, and the relevant technology licenses for the previous solution have expired. *Id*. Without an ICAM solution, the Department would be vulnerable to security breaches, which would risk unauthorized access to sensitive personal identifiable information. *Id*. at 10, 37. Under these circumstances, the balance of harms weighs against granting injunctive relief and the public interest is best served by allowing the Department to continue transitioning to a new ICAM solution.

## V. CONCLUSION

For the reasons stated above, LS3's motions for a preliminary injunction and to supplement the administrative record are **DENIED**.

The government's motion to strike is **GRANTED**. The Clerk is **DIRECTED** to strike [ECF 29], [ECF 29-1], [ECF 30], [ECF 30-1], and [ECF 31] from the record. LS3's motion to complete the administrative record is **DEFERRED** pending further proceedings in this bid protest.

11

The parties **SHALL FILE** a joint status report with their proposed schedule for further proceedings **on or before October 14, 2022**.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on September 14, 2022. *See* [ECF 14]. Accordingly, the Opinion is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE**, on or before **October 21, 2022**, a joint status report that: identifies the information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion and Order.

**IT IS SO ORDERED.**

                                                     s/ Thompson M. Dietz
                                                     THOMPSON M. DIETZ, Judge